UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| JUAN DE LUNA<br><br>       *Plaintiff*,<br><br>v.<br><br>LAREDO REGIONAL MEDICAL CENTER,<br>L.P. d/b/a DOCTORS HOSPITAL OF<br>LAREDO and AARGON AGENCY INC.<br><br>       *Defendants.* | Civil No. <u>5:25-CV-25-116</u><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff JUAN DE LUNA ("Plaintiff" or "De Luna"), and files this Complaint against Defendants LAREDO REGIONAL MEDICAL CENTER, L.P. d/b/a DOCTORS HOSPITAL OF LAREDO and AARGON AGENCY INC. (collectively, "Defendants"), to obtain actual damages, statutory penalties, declaratory relief, injunctive relief, costs, and reasonable attorney's fees for Defendants' violations of federal and state consumer protection laws.

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Juan De Luna is an individual citizen of Texas whose primary residence is located in Eagle Pass, Texas.

2. On information and belief, Defendant Laredo Regional Medical Center, L.P. d/b/a Doctors Hospital of Laredo (the "Hospital") is a Delaware limited partnership with its principal place of business in Laredo, Texas, which regularly conducts business in this District. On information and belief, the Hospital can be served with a copy of this Complaint and a Summons through its registered agent for service is CT Corporation System, 1999 Bryan St., Ste. 900, Dallas,

- 1 -

TX 75201.

3.      On information and belief, Defendant Aargon Agency Inc. ("Aargon") is a Nevada corporation with its principal place of business in Las Vegas, Nevada, which regularly conducts business in this District. On information and belief, Aargon can be served with a copy of this Complaint and a Summons at its headquarters located at 8688 Mountain Road, Suite 110, Las Vegas, NV 89117.

4.      On information and belief, at all relevant times, with respect to the transactions and events underlying this matter, Aargon was acting as the authorized agent of the Hospital.

5.      This Court has original jurisdiction over the federal law claims asserted in this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claims asserted in this matter under 28 U.S.C. § 1367.

6.      Venue is appropriate in this Court under 28 U.S. Code § 1391.

## BACKGROUND

**A.**    **After De Luna Was Injured In A Motor Vehicle Collision, He Received Emergency Medical Care From The Hospital.**

7.      On or about July 3, 2023, De Luna was driving a vehicle on a highway near Laredo, Texas when his vehicle was struck by an 18-wheeler (the "Accident").

8.      The Accident resulted in injuries to De Luna and a passenger in the vehicle, Veronica Chacon.

9.      On or about July 3, 2023, following the Accident, De Luna received emergency medical treatment at the Hospital (the "Date of Service").

10.    The Hospital and De Luna did not agree on any prices or reimbursement rates for any of the medical treatment provided on the Date of Service.

**B.     The Hospital Cannot Demand That De Luna Pay More Than The Patient Responsibility Determined By His Out-Of-Network Health Plan.**

11.     On the Date of Service, De Luna had healthcare coverage through the self-funded health plan sponsored by the Eagle Pass Independent School District (the "Plan").

12.     The Plan is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

13.     In addition to ERISA, reimbursement claims submitted by healthcare providers for Plan benefits are subject to the terms of the governing Plan Document and Summary Plan Description (the "Plan Document")

14.     On information and belief, the Hospital was not a participating provider of the Plan—*i.e.*, the Hospital was "out of network" for the Plan— on the Date of Service.

15.     In 2022, Congress enacted the No Surprises Act ("NSA") to protect patients from balance bills for emergency care provided by out-of-network facilities and other healthcare providers.

16.     The NSA amended the Public Health Service Act, the Internal Revenue Code, and ERISA. The NSA applies to self-funded health plans, which are governed by ERISA, and which are generally not subject to Texas's insurance codes and regulations concerning surprise medical bills.[1]

17.     Under the NSA, the liability of a patient with self-funded health plan coverage to an out-of-network provider of emergency services is based on the qualifying payment amount ("QPA") that is calculated by the plan as part of its benefits determination. *See* 42 U.S.C. § 300gg-111(a)(3)(E)(i); 45 C.F.R. § 149.410(a)(1).

---

[1] Texas insurance laws concerning balance billing for emergency care do not apply here because, on information and belief, the Plan did not elect to participate in Texas's IDR for the plan year. *See* Tex. Senate Bill 1264; Tex. House Bil 1592; Adoption Order 2023-8410.

18.     The QPA is calculated based on:

the median of the contracted rates recognized by the plan or issuer, respectively (determined with respect to all such plans of such sponsor or all such coverage offered by such issuer that are offered within the same insurance market . . . as the plan or coverage) as the total maximum payment (including the cost-sharing amount imposed for such item or service and the amount to be paid by the plan or issuer, respectively) under such plans or coverage, respectively, on January 31, 2019, for the same or a similar item or service that is provided by a provider in the same or similar specialty and provided in the geographic region in which the item or service is furnished.

42 U.S.C. § 300gg-111(a)(3)(E)(i)(I). The QPA is adjusted for inflation annually. *See* 42 U.S.C. § 300gg-111(a)(3)(E)(i)(II).

19.     Once the health plan determines the QPA for an out-of-network emergency service, the plan calculates the patient's payment obligation to the out-of-network provider, or "cost sharing," based on the QPA and as if the services had been provided by an in-network provider. *See* 42 U.S.C. § 300gg-111(a)(1)(C)(ii)-(iii), (3)(H)(ii), (b)(1)(A)-(B). The patient's "'cost-sharing' includes copayments, coinsurance, and deductibles." *See* 42 U.S.C. § 300gg-111(a)(1)(L). "Cost-sharing" is sometimes referred to as the "patient responsibility" or the patient's "out-of-pocket" amount.

20.     Under the NSA, an out-of-network hospital cannot balance bill or otherwise seek to collect from a patient any amount in excess of their patient responsibility for emergency care unless it obtains informed consent from the patient akin to a waiver of the NSA's protections. *See* 42 U.S.C. § 300gg-131(a)(1); 45 C.F.R. § 149.410(a)(1).

21.     The Hospital did not obtain any such informed consent or waiver of the NSA's protections from De Luna in connection with the Date of Service.

22.     On information and belief, the Hospital sent a reimbursement claim to the Plan for the medical treatment provided to De Luna on the Date of Service, with total billed charges of $52,446.00 (the "Claim").

23.     On or about January 17, 2024, the Plan issued an Explanation of Benefits ("EOB") for the Claim indicating that, *inter alia*:

       a.     the Hospital's charges exceeded the Plan's allowable claim limit of $1,280.75 for the Date of Service;

       b.     $51,165.25 of the charges were deemed ineligible as in excess of the allowable claim limit;

       c.     there was a copay of $105.00 and a coinsurance of $508.17, for a total patient responsibility of $613.17 ("Patient Responsibility");

       d.     the QPA was $5,186.72;

       e.     the Patient Responsibility was based on the QPA; and

       f.     the Plan would pay benefits of $1,058.18 based on the sum of the allowable claim limit minus the copay multiplied by 90%—*i.e.* ($1,280.75 - $105.00) x 90% = $1,058.18 (the "Plan Benefits").

24.     In other words, the Plan determined that the total reimbursement for the Date of Service would be $1,671.35 ("Total Reimbursement").

25.     The EOB further notified the Hospital of its ability to pursue additional payment from the Plan if it was dissatisfied with the reimbursement.

26.     On information and belief, upon issuing the EOB, the Plan paid the Plan Benefits of $1,058.18 to the Hospital for the Claim and that payment was credited to the Hospital's account for the Date of Service.

27.     Under ERISA and the Plan Document, the exclusive means by which the Hospital could have challenged the Plan's determination of the Claim was through an appeal to the Plan administrator and/or its designated decision-maker.

28.    On information and belief, the Hospital did not timely appeal the Plan's determination of the Claim and the time for submitting an appeal has expired.

29.    Because the Hospital did not timely appeal the Plan's determination of the Claim, the Hospital is foreclosed from challenging, *inter alia*, the Plan's determination of the Claim, including but not limited to the Plan's determination of the QPA and/or the Patient Responsibility.

30.    De Luna has not yet paid any amount to the Hospital for the Date of Service.

31.    The remaining amount owed to the Hospital by De Luna is less than or equal to the Patient Responsibility ($613.17).

32.    Under the NSA and its implementing regulations, the Hospital cannot balance bill De Luna for the difference between the Total Reimbursement and the total billed charges and cannot seek to recover from De Luna any amount in excess of the Patient Responsibility ($613.17). *See* 42 U.S.C. § 300gg-131(a)(1); 45 C.F.R. § 149.410(a)(1).

33.    Instead, under the NSA, the maximum amount that the Hospital may demand or seek to collect from De Luna is less than or equal to the Patient Responsibility ($613.17). *See id.*

**C.    The Hospital's Lien On De Luna's Potential Recovery In The Personal Injury Lawsuit Arising From The Accident Cannot Exceed The Patient Responsibility.**

34.    On or about December 28, 2024, De Luna and Chacon filed a lawsuit against parties allegedly liable for their injuries resulting from the Accident, including the alleged driver of the 18-wheeler and his alleged employer, in a matter styled *Veronica Chacon and Juan Deluna v. Armando Rivera Zea d/b/a D'Leon and Rivera and Carlos Enrique Cruz* in the District Court of Webb County, Texas, Cause No. 2023CVA002060D4, which was removed to this Court and is currently pending as Case No. 5:24-cv-0046 (the "Personal Injury Lawsuit").

35.    De Luna seeks to recover, *inter alia*, his medical expenses in Personal Injury Lawsuit.

36.     Under Texas law, which is subject to the federal NSA, the Hospital's lien against De Luna's recovery in the Personal Injury Lawsuit (the "Lien") – assuming *arguendo* that the Hospital holds such a lien – can be no greater than the Patient Responsibility (and may be further limited by the reasonable value of the services).

37.     On information and belief, the Hospital has not yet secured a Lien, but could do so at any point until money is paid pursuant to any settlement or judgment in the Personal Injury Lawsuit.

38.     If a Lien were to be secured before any settlement or judgment is paid, then any release of De Luna's cause of action or judgment in the Personal Injury Lawsuit would not be valid unless the Lien were released or paid in full.

39.     The parties to the Personal Injury Lawsuit have been unable to resolve the matter partly due to uncertainty around the existence and amount of the Lien.

**D.     Defendants' Violations Of Federal And State Consumer Protection Laws.**

40.     On or about March 6, 2024, De Luna's counsel sent a letter to the Hospital requesting a copy of an itemized bill for the Date of Service.

41.     On or about September 19, 2024, the Hospital represented to De Luna's counsel in an affidavit attaching an itemized bill that its patient account for the Date of Service has an unpaid a balance of $51,387.82 (the "Account") and falsely asserted that De Luna owes the Hospital a "Patient Balance" of $51,387.82 for the Date of Service (the "Claimed Balance").

42.     The Claimed Balance exceeds the Patient Responsibility by $50,774.65 (the "Excess Balance").

43.     De Luna has never agreed to pay the billed charges, the Claimed Balance, the Excess Balance, or any other amount to the Hospital. In particular, De Luna has never agreed to pay the Hospital any amount, let alone any amount in excess of the Patient Responsibility.

44.    In or about March 2025, De Luna's counsel advised the Hospital that its Account and any associated Lien should not exceed the Patient Responsibility ($613.17). The Hospital did not respond.

45.    On information and belief, the Hospital assigned the Account to Aargon.

46.    In or about April 2025, De Luna's counsel contacted Aargon about the Account and advised that the Account and any associated Lien should not exceed the Patient Responsibility

47.    On or about April 28, 2025, Aargon responded in an email that falsely represented to De Luna's counsel that De Luna still owes $51,387.82 for the Account.

**E.    The Parties' Dispute Concerning The Amount Of The Hospital's Lien.**

48.    The Parties have not reached an agreement concerning the existence, amount, and enforceability of the Lien.

49.    De Luna contends that any Lien the Hospital may assert cannot exceed the Patient Responsibility ($613.17).

50.    Despite multiple requests, the Hospital and Aargon have refused to agree or confirm that any Lien is limited to the Patient Responsibility.

51.    On information and belief, the Hospital and Aargon maintain that the Hospital has a Lien that exceeds the Patient Responsibility and is equal to the Claimed Balance ($51,387.82).

52.    Accordingly, there is a real, immediate, actual, and justiciable dispute concerning the Parties' rights, status, and other legal relations with respect to the existence, amount, and enforceability of any Lien.

## COUNT I

### Violation of the Fair Debt Collection Practices Act

### Against Aargon

53.    Aargon qualifies as a "debt collector," as defined in Section 1692a(6) of the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"): "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

54.     The Account, Claimed Balance, and/or Lien qualify as a "debt," as defined in Section 1692a(5) of the FDPCA: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

55.     De Luna qualifies as a "consumer," as defined in Section 1692a(3) of the FDPCA: "any natural person obligated or allegedly obligated to pay any debt."

56.     Under Section 1692f(2)(A) of the FDCPA, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including any "false representations of the character, amount, or legal status of any debt."

57.     Aargon violated Section 1692f(2)(A) of the FDCPA by, *inter alia*, falsely, deceptively, and/or misleadingly representing to De Luna and/or his agent(s) that the amount of the debt owed by De Luna to the Hospital for the Date of Service is $51,387.82 (the Claimed Balance), when in fact the amount of any debt owed by De Luna is less than or equal to $613.17 (the Patient Responsibility).

58.     A debt collector that violates Section 1692f(2)(A) of the FDCPA is liable to a consumer under a private right of action under Section 1692k(a) of the FDCPA for actual damages, additional statutory damages as allowed by the court up to $1,000 per violation, the costs of the action, and reasonable attorneys' fees.

59.     Because Aargon violated Section 1692f(2)(A) by misrepresenting the amount of any debt owed by De Luna to the Hospital for the Date of Service, under Section 1692k(a) of the FDCPA, De Luna is entitled to recover from Aargon any actual damages, statutory damages of up to $1,000 for each violation as determined Court, costs, and reasonable attorneys' fees.

## COUNT II

### Violation of the Texas Debt Collection Act

### Against The Hospital and Aargon

60.     The Hospital and Aargon qualify as "debt collectors," as defined in Section 392.001(6) the Texas Debt Collection Act, Tex. Fin. Code § 392.001, et seq. (the "TDCA"): "a person who directly or indirectly engages in debt collection …."

61.     The Hospital's affidavit and itemized bill, Aargon's email, and Defendants' other efforts to obtain payment of the Claimed Balance qualify as "debt collection" under Section 392.001(5) of the TDCA: "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."

62.     The Account, Claimed Balance, and/or Lien qualify as a "consumer debt," as defined Section 392.001(2) of the TDCA: "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction."

63.     De Luna qualifies as a "consumer," as defined in Section 392.001(1) of the TDCA: "individual who has a consumer debt."

64.     Under Section 392.304(a)(8) of the TCA, in debt collection, "debt collector may not use a false, deceptive, or misleading representation," including "misrepresenting the character, extent, or amount of a consumer debt."

65.     The Hospital and Aargon violated Section 392.304(a)(8) of the TCA by, *inter alia*,

falsely, deceptively, and/or misleadingly representing to De Luna and/or his agent(s) that the amount of the debt owed by De Luna to the Hospital for the Date of Service is $51,387.82 (the Claimed Balance), when in fact the amount of any debt owed by De Luna is less than or equal to $613.17 (the Patient Responsibility).

66.    A debt collector that violates Section 392.304(a)(8) of the TDCA is liable to a consumer under a private right of action under Section 392.403(a) of the TDCA for, *inter alia*, actual damages, the costs of the action, and reasonable attorneys' fees.

67.    Because the Hospital and Aargon violated Section 392.304(a)(8) by misrepresenting the amount of the debt owed by De Luna to the Hospital for the Date of Service, under Section 392.403 of the TDCA, De Luna is entitled to recover from the Hospital and Aargon any actual damages, costs, and reasonable attorneys' fees.

68.    Under Section 392.403 of the TDCA, De Luna is also entitled to injunctive relief under the TDCA barring the Hospital and Aargon from asserting, securing, or otherwise attempting to collect on the Account, the Claimed Balance, and/or any Lien in excess of the Patient Responsibility of $613.17 or a lesser amount determined by the Court.

69.    Additionally, under Sections 37.003(a) and 37.004(a) of Texas's Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.001 et seq., De Luna respectfully requests that the Court enter judgment declaring the rights, status, or other legal relations of the Parties with respect to the Account, the Claimed Balance, and/or any Lien the Hospital may have against De Luna's causes of action in the Personal Injury Lawsuit, and declare that the Hospital's Lien is less than or equal to the Patient Responsibility and that De Luna does not owe the Defendants any amount in excess of the Patient Responsibility for the Date of Service and Account.

**PRAYER FOR RELIEF**

WHEREFORE, De Luna respectfully requests that the Court hold a jury trial on all issues so triable and:

1.      enter judgment in favor of De Luna and against Defendants on all causes of action asserted herein;

2.      award De Luna actual damages, statutory penalties under the FDPCA and the TDCA, costs, and reasonable attorney's fees;

3.      enjoin Defendants from taking any action to secure a Lien or otherwise attempting to collect from De Luna any amount in excess of the Patient Responsibility or a lesser amount determined by the Court;

4.      declare that the Hospital's Lien is less than or equal to the Patient Responsibility and that De Luna does not owe Defendants any amount in excess of the Patient Responsibility for the Date of Service and Account; and

5.      grant all other and further relief as it deems just and fair.

Respectfully submitted this 11th day of July 2025.


*/s/ Fidel Rodriguez, Jr.*
Fidel Rodriguez, Jr.
State Bar No. 17145500
SDTX Federal ID No. 1961
Email: fidel@fidrodlaw.com
RODRIGUEZ TRIAL LAW
231 W. Cypress Street
San Antonio, Tx 78212
210-777-5555; Telephone
210-224-0533; Facsimile

Patrick M. Emery
State Bar No. 24126860
SDTX Federal ID No. 3927311
LAVENDER HOFFMAN EMERY, LLC
750 Hammond Drive
Building 2, Suite 200
Atlanta, GA 30328
Tel.: 404-793-0653
Fax: 404-400-4500
Email: pemery@lhefirm.com


*Attorneys for Plaintiff Juan De Luna*